IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2012

**AARON BENARD BARNETT v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Madison County**
**No. C-11-181      Donald H. Allen, Judge**

---

**No. W2011-02694-CCA-R3-PC  - Filed December 14, 2012**

---

On September 10, 2009, a Madison County jury convicted the Petitioner, Aaron Benard Barnett, of one count of aggravated burglary and one count of vandalism, and the trial court sentenced him to an effective sentence of ten years of incarceration. The Petitioner appealed his jury convictions and his sentence, and this Court affirmed his convictions and sentence. *State v. Aaron Benard Barnett*, No. W2009-02582-CCA-R3-CD, 2011 WL 1224208 (Tenn. Crim. App., at Jackson, Mar. 30, 2011), *no Tenn. R. App. P. 11 application filed*. The Petitioner filed a petition for post-conviction relief, alleging that he had received the ineffective assistance of counsel. After a hearing, the post-conviction court dismissed the petition. On appeal, the Petitioner maintains that his trial counsel was ineffective. After a thorough review of the record and applicable authorities, we conclude there exists no error in the judgment of the post-conviction court. We, therefore, affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Aaron Benard Barnett.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. Woodall, District Attorney General, and Shaun A. Brown, Assistant District Attorney General for the appellee, State of Tennessee.

**OPINION**

# I. Facts

## A. Jury Convictions

In our opinion affirming the Petitioner's convictions for aggravated burglary and vandalism, we summarized the facts presented to the jury as follows:

> The [Petitioner] and the victim were involved in a dating relationship, and, although they separated in November 2008, the victim testified that the [Petitioner] continually phoned her, making unwanted attempts at reconciliation. The [Petitioner] also harassed her in other ways, including taking her phone and car keys. The fear caused by the [Petitioner's] actions led the victim to stay at her mother's house. The [Petitioner's] course of conduct reached a climax on December 6, 2008, when the victim and her father returned to her home to find that the back door of the house had been "kicked in."

> When the victim entered the house, she determined that her Christmas tree had been kicked over and stepped on; the presents under the tree were missing; a television was turned over; and another television, a computer, and a telephone were missing. Further inspection revealed holes in the walls of the hallway, a mirror knocked off the frame in the bedroom, additional damage to the furniture, and several more destroyed personal items including the family china set. The victim contacted the police. The victim's mother estimated that the cost to repair the damage to the house was approximately $900-1000, and that the value of the destroyed personal items was $250.

> A few days later, the [Petitioner] called the victim and "was talking crazy," leading her to hang up on him. He then began to text her incessantly, alternatively threatening her and promising to return things that had been taken from the apartment during the break-in on December 6. The [Petitioner] made numerous inculpatory statements in these text messages, including "You dang right I took whatever I bought up out of that house" and ". . . I guess I'll go on and keep this house phone and the TV."

The judgments of conviction were entered on October 8, 2009, and they reflect that the trial court sentenced him to an effective sentence of ten years of incarceration. Additionally, the Petitioner pled guilty to two counts of harassment and one count of evading arrest. The trial court sentenced the Petitioner to eleven months and twenty-nine days on each count, ordering the sentences to run concurrently with each other and concurrently with the sentences from

-2-

the Petitioner's jury trial convictions.

## B. Post-Conviction Hearing

On July 6, 2011, the Petitioner filed a pro se petition for post-conviction relief challenging his jury convictions. The post-conviction court appointed an attorney for the Petitioner, and the attorney amended the petition for post-conviction relief. The petition claimed that the Petitioner had received the ineffective assistance of counsel during his jury trial. The State responded, and the trial court held a hearing, wherein the parties presented the following evidence: The Petitioner testified that the charges that he faced when Counsel represented him stemmed from actions he allegedly committed against his then girlfriend, who was also the mother of his child. The Petitioner said that he and Counsel had an "understanding" that the charges against him in this case were not "actually valid." The Petitioner said that Counsel informed him that the State did not have anything "concrete" to incriminate him in these offenses. Counsel said that the State had some text messages from the Petitioner in which the Petitioner stated he had some property, but Counsel noted that, in the text messages, the Petitioner did not admit to an actual crime.

The Petitioner said that Counsel asked the Petitioner if he was willing to plead guilty, and the Petitioner told Counsel, "No." The Petitioner explained to Counsel that the State did not have evidence against him and that the Petitioner was maintaining his innocence. The Petitioner testified that Counsel "agreed," stating he also did not think the Petitioner should plead guilty.

The Petitioner said he asked Counsel to suppress the victim's statement. As a basis for this, he noted that the victim filed for an order of protection against him and then visited him in jail. He said that she wanted to avoid the trial "altogether." The Petitioner said Counsel told him that he would file a motion to suppress but that the Petitioner should not "worry" about it because the case was "not going to get that far." The Petitioner said Counsel told him not to plead guilty because the State was going to dismiss the case. The Petitioner recalled that the State offered him a sentence of three years in exchange for his guilty plea. He said Counsel led him to believe that he would prevail at trial, so he declined the State's offer. The Petitioner said he would have agreed to plead guilty "had [Counsel] really explained to me the situation that I was really in."

The Petitioner testified that Counsel informed him that the longest possible sentence he faced was six years. The Petitioner said, the day of trial, Counsel informed him that he was charged with two felonies instead of just one felony. Counsel again informed him that his case was likely to be dismissed and not proceed to trial. The Petitioner said that, when the charges were not dismissed before trial, Counsel told him this was "just procedure."

The Petitioner said he and Counsel discussed the "pros and cons" of going to trial. The Petitioner said that he asked Counsel if he should take the State's offer of three years, and Counsel said "No. Why should you? They don't have any evidence against you to prove this." The Petitioner said that he asked Counsel how Counsel intended to rebut the text message evidence, and Counsel told him the messages were "not evidence against [him]." The Petitioner said Counsel told him that "he would take care of it." The Petitioner said he was under the impression that the text messages would not be admissible at trial. The Petitioner said that, during his trial when the State offered the messages, Counsel did not object to their admissibility.

The Petitioner testified that Counsel failed to adequately cross-examine the victim about her inconsistent statements and about her coming to visit the Petitioner while he was incarcerated. The Petitioner said he told Counsel that the victim was writing letters to him in prison but that Counsel did not question the victim about this. The Petitioner said that, had Counsel investigated the victim's actions, the case against him would have been dismissed.

The Petitioner recalled that the State had dismissed some of the misdemeanor charges against him, however, when his indictment was read before trial, it included the charges that had been dismissed. The Petitioner asked Counsel how the State could "bring these charges back up," and Counsel told him not to worry because most of the time when they bring charges back up the State's case is "weak."

The Petitioner said that, at some point before trial, he became willing to enter a best interest plea to misdemeanor vandalism and to accept the plea offer. He expressed this desire to Counsel, who he said did not respond to him.

The Petitioner testified that he was "willing to testify" on his own behalf but that Counsel urged him not to because it was the victim's word against the Petitioner, and Counsel felt he had discredited the victim. The Petitioner said he would have testified that he did not commit these crimes.

The Petitioner said that, during trial, Counsel was ineffective for failing to object when the State questioned the victim about the Petitioner's prior bad acts. The Petitioner recounted that the State asked the victim about their dating relationship, break-ups, and a domestic assault that the Petitioner committed against the victim. The Petitioner said Counsel lodged an objection but that it was after so much questioning had passed that it was ineffective.

The Petitioner also testified that Counsel was ineffective during closing argument because he did not object when the State discussed the history between the victim and the

Petitioner during its argument. The Petitioner noted that the stalking and harassment charges had been severed and said that the State went into the basis of those charges during the closing argument. Counsel, he said, never objected to any of this argument.

The Petitioner testified Counsel was ineffective for failing to raise the issue of the text messages on appeal. He also asked him to appeal the severance of the offenses. The Petitioner said Counsel was ineffective for not asking the trial judge to recuse himself because the trial judge had previously been a prosecutor and had prosecuted the Petitioner's father.

During cross-examination, the Petitioner explained that the victim's "statement" that he wanted suppressed was one the victim made at the preliminary hearing. At the Petitioner's preliminary hearing, the victim had testified that everything that the Petitioner had taken from the house were items that he had purchased or helped her purchase. She later said, however, that she did not see the crime committed and did not know who committed the crime. The Petitioner wanted Counsel to suppress this second statement.

The Petitioner agreed that he had read the waiver of rights form that informed him of his right to testify and that the judge reviewed the document with him. The Petitioner agreed that he chose not to testify but that he made this decision on Counsel's advice. The Petitioner denied remembering that, regarding his decision not to testify, Counsel informed the Petitioner that, if he decided to testify, the State would be permitted to cross-examine him about an aggravated assault conviction from 2003.

The Petitioner explained that Counsel should have asked the trial judge to recuse himself because the trial judge unsuccessfully prosecuted the Petitioner's father. Further, the Petitioner's father was present during the trial. The Petitioner conceded that he did not have any proof that this prejudiced the trial court, but he said he thought it "[m]aybe" prejudiced him.

The Petitioner agreed that Counsel came to see him in jail and that the two discussed the "pros and the cons" of going to trial. The two also discussed the State's plea offer. The Petitioner said he was aware that the only testimony against him was the victim's testimony and the text messages, and he conceded that this evidence was all the State presented during the trial.

Counsel testified that he was first appointed to represent the Petitioner at the Petitioner's arraignment. He visited the Petitioner in jail on at least five occasions before trial, and the two also met before or after the Petitioner's court dates. Counsel recalled that the Petitioner's trial was scheduled for June, and some of the State's witnesses did not

appear. The State, therefore, made a plea offer. The Petitioner did not accept the plea offer at that time.

Counsel testified that he told the Petitioner that the State had made a plea offer of three years. Counsel said he discussed with the Petitioner the pros and cons of going to trial, including the range of possible punishment. The Petitioner did not want to accept this plea offer. Counsel said that the decision to turn down the State's offer was the Petitioner's decision.

Counsel testified that the victim's statement during the preliminary hearing could only be used to cross-examine the victim. Counsel testified that the State did not offer any prior statement by the victim during the trial. Counsel further testified that there were no legal grounds to have the victim excluded from testifying all together.

Counsel testified that he discussed with the Petitioner the pros and cons of the Petitioner testifying. This discussion occurred after the trial judge had ruled that, if the Petitioner testified, the State could impeach him with his prior felony conviction. After their discussion, the Petitioner chose not to testify. The trial court held a hearing to ensure that the Petitioner understood that he was waiving his right to testify, and the Petitioner signed and submitted to the trial court a form waiving his right.

Counsel said that, during the trial, the victim brought up "unsolicited" testimony about "the first time [the Petitioner] had done something to [her]." Counsel objected on the basis of an oral motion in limine filed before trial, which the trial court granted, to exclude such testimony. After his objection, the State agreed not to pursue this line of questioning.

Counsel testified that he did not object to the State's closing arguments. He also said that he did not remember if he and the Petitioner discussed having the trial judge recused, but he said that, if they had, Counsel did not think there was any basis for such a motion.

Counsel said that he was aware before trial that the State was going to seek to admit text messages purportedly from the Petitioner to the victim in this case. Counsel said that, during a sidebar, he asked the trial court to ensure that the State authenticated the text messages. The State engaged in a line of questioning to authenticate the text messages with the victim, and the trial judge ruled the text messages admissible.

During cross-examination, Counsel testified that he discussed with the Petitioner that the State's case was not the "strongest case" because the only proof against the Petitioner was the text messages and the victim's testimony. He explained to the Petitioner, however, that the Petitioner faced a greater sentence because he had a prior felony conviction. Counsel

said that he discussed with the Petitioner the admissibility of the text messages, explaining to the Petitioner that the victim would have to, in some way, authenticate them before they would be admissible. The victim testified that she had been texting the Petitioner and trying to "trap" him into making an admission. She said she also called him.

Counsel testified that he presented the State's plea offer to the Petitioner. He said that the decision of whether to accept the offer was the Petitioner's, and he "respect[ed] whatever [the Petitioner] want[ed] to do."

Counsel testified that, the morning of trial, he asked the trial court to sever the Petitioner's felony cases from his misdemeanor cases. Counsel said that he explained to the Petitioner that if the cases were severed and if they successfully defended the felony charges, the State might not proceed on the misdemeanor charges.

On October 6, 2011, by written order, the post-conviction court dismissed the Petitioner's petition for post-conviction relief. The trial court, in a later order, found:

> After considering the [P]etitioner's ground for relief, the testimony of [the Petitioner] and also the testimony of his trial counsel, [Counsel], and after considering all of the evidence in this case, the Court finds that the [P]etitioner has failed to prove the allegations in his petition by clear and convincing evidence, therefore his Petition for Post Conviction Relief will be denied.
>
> The Court finds that the advice given and the services rendered by [Counsel], were certainly within the range of competence demanded of attorneys representing defendants in criminal cases. The Court also finds that [the Petitioner] has failed to show that his attorney's performance was deficient or that any alleged deficient performance by [Counsel] somehow prejudiced the [Petitioner].
>
> The [Petitioner] testified at the hearing in this matter that he chose not to accept the State's original plea offer of 6 years to serve and that he also rejected the State's later plea offer of 3 years to serve, although he now would be willing to accept the plea offer of 3 years. [The Petitioner] also testified that he chose not to testify at his trial, after being advised by the Court of his constitutional right to choose whether or not to testify on his own behalf.
>
> The Court finds that none of [Counsel]'s actions or omissions were so serious as to fall below the objective standard of reasonableness under prevailing professional norms. The Court finds that [Counsel's] representation

was appropriate and that he provided [the Petitioner] with reasonably effective assistance.

Since the [P]etitioner has failed to bear his burden of proof in this matter, his Petition will be denied.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it dismissed his petition because he received the ineffective assistance of counsel. He asserts that Counsel was ineffective because: (1) he misinformed him that the case against him would be dismissed, so the Petitioner did not accept the State's plea offer; (2) he advised the Petitioner that the text messages were not evidence and that he would "take care of [them];"and (3) he advised him not to testify. The Petitioner asserts that he was prejudiced by Counsel's deficient performance. The State counters that the Petitioner has proven neither that Counsel was ineffective nor that the Petitioner was prejudiced. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

Both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution guarantee the right of a criminally accused to representation. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that trial counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or the services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). We should not deem that counsel was ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

We conclude that the Petitioner has not met his burden of proving that Counsel was ineffective. We conclude that the Petitioner's allegation that Counsel informed him that his case would be "dismissed" is unlikely. Counsel testified that he informed the Petitioner that the State's case was not the strongest, in light of the evidence against him. We similarly conclude that the Petitioner's assertion that Counsel told the Petitioner he would "take care of" the text messages unlikely. Counsel testified that he informed the Petitioner that the victim would have to, in some way, authenticate the text messages before they would be admissible. Before the victim testified about the text messages, Counsel asked the trial court to ensure that the messages were authenticated. The victim then testified that the messages occurred during an argument, that she spoke with the Petitioner during the time the messages were being sent, and that they were in response to an attempt on her part to "trap" the Petitioner. Counsel's performance in this regard was not ineffective. Finally, we conclude the Petitioner has not proven that Counsel was ineffective for advising him not to testify. Counsel said that he discussed with the Petitioner the pros and cons of testifying, including that the State could impeach the Petitioner with the Petitioner's prior felony conviction. He said he left the decision to the Petitioner, who ultimately decided not to testify. The trial court discussed the Petitioner's waiver of his right to testify with the Petitioner, and the Petitioner acknowledged he understood. The Petitioner has not proven that Counsel was ineffective or that Counsel's performance in any way prejudiced him. The Petitioner is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we conclude that the Petitioner has not proven that he is entitled to post-conviction relief. We, therefore, affirm the post-conviction court's dismissal of his petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE